# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00826-COA

**EMANUEL RICHARDSON A/K/A EMMANUEL RICHARDSON**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/03/2024 |
| TRIAL JUDGE: | HON. CAROL L. WHITE-RICHARD |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PETER ANTHONY CARL STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 09/02/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. This is an appeal from a circuit court's denial of a motion for post-conviction collateral relief (PCR). After pleading guilty, on April 23, 2013, the Circuit Court of Washington County sentenced Emanuel Richardson to a total of forty years in the custody Mississippi Department of Corrections. The court ordered him to serve fifteen years for armed robbery, two concurrent twenty-year sentences for burglary and aggravated assault, and a consecutive term of five years for escape. On October 4, 2022, Richardson subsequently filed his PCR motion pursuant to Mississippi Code Annotated section 99-39-5(2)(a)(i) (Rev. 2020). He argued that his guilty pleas were involuntary because his trial counsel misinformed him and his family about his eligibility for parole, specifically the

length of time he would serve following his convictions. The circuit court denied his PCR motion, and he now appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.    On January 16, 2013, Emanuel Richardson was charged with (1) burglary of a dwelling, (2) aggravated assault with a firearm enhancement, (3) escape, and (4) armed robbery. In exchange for his testimony against his co-defendant regarding the aggravated assault charge, the State dismissed the firearm enhancement.

¶3.    During the plea hearing, Richardson stood with his mother and counsel before the court. The record reflects that due to Richardson's age (nineteen-years-old), the court took great care to ensure Richardson understood his rights and the implication of pleading guilty. The court explained on the record that for Richardson to enter a valid guilty plea, the plea must be made freely and voluntarily. Richardson confirmed that his attorney had reviewed the plea petition with him and that he understood and had signed it.  However, as the court noted while reviewing the plea petition, the petition did not include the applicable minimum and maximum sentences for each charge, instead stating simply "life."  To address this discrepancy, the court requested clarification from Richardson's counsel, E. Tucker Gore. Gore explained, "I did not write out the separate [sentences] for each charge, your Honor. In the total of all four [counts] with the armed robbery he is looking . . . potentially at life[.]" The court stated that Richardson had to be informed of his possible sentences for each count and reviewed the minimum and maximum sentences with counsel.

¶4.    The court then carefully reviewed each charge with Richardson to ensure he

understood the minimum and maximum sentences associated with the counts to which he was pleading guilty:

[THE COURT]:     Burglary. Do you know what the maximum is?

[RICHARDSON]:   Yes, ma'am.

[THE COURT]:     What is it?

[RICHARDSON]:   Twenty-five.

[THE COURT]:     Minimum?

[RICHARDSON]:   Three.

[THE COURT]:     Aggravated assault?

[RICHARDSON]:   Twenty.

[THE COURT]:     Minimum?

[RICHARDSON]:   I think you said three.

[THE COURT]:     One. I think that's what she said.

[RICHARDSON]:   One year in the county jail.

[THE COURT]:     And then the burglary again?

[RICHARDSON]:   Twenty-five.

[THE COURT]:     Minimum?

[RICHARDSON]:   Three.

[THE COURT]:     And if it's enhanced?

[RICHARDSON]:   Five.

[THE COURT]:     Okay. And escape?

3

[RICHARDSON]:  Five.

[THE COURT]:  Minimum?

[RICHARDSON]:  Ain't none.

[THE COURT]:  Armed robbery?

[RICHARDSON]:  Life.

¶5.     After confirming the maximum and minimum sentences of each count, the court

clarified the number of felony convictions Richardson was being charged with and the rights

he was waiving:

> [THE COURT]:  If you take these pleas, how many felony convictions will
> you have?
>
> . . . .
>
> [RICHARDSON]:  Four.
>
> [THE COURT]:  Four. And under the laws of the State of Mississippi,
> after a certain number of felony convictions, a defendant
> has to serve the maximum for the crime for which he is
> convicted. And this is to be served without parole, and in
> some instances, the defendant must be sentenced to life
> imprisonment without parole. Do you understand that?
>
> [RICHARDSON]:  Yes, ma'am.
>
> . . . .
>
> [THE COURT]:  All right. If you enter these pleas, you cannot appeal any
> sentence that I may impose on you. Do you understand
> that?
>
> [RICHARDSON]:  Yes, ma'am.

¶6.     The court then clarified whether Richardson and his attorney had discussed all other

4

possible defenses and alternatives prior to entering the guilty pleas.

> [THE COURT]: Has anyone promised you anything to enter these pleas?
>
> [RICHARDSON]: No, ma'am.
>
> [THE COURT]: Were you threatened in any way?
>
> [RICHARDSON]: No, ma'am.
>
> [THE COURT]: Have you discussed all of the facts and circumstances surrounding your case with your attorney?
>
> [RICHARDSON]: Yes, ma'am.
>
> [THE COURT]: Has your attorney explained to you and do you fully understand the nature of these charges?
>
> [RICHARDSON]: Yes, ma'am.
>
> [THE COURT]: Have you-all talked about possible defenses you might have?
>
> [RICHARDSON]: Yes, ma'am.
>
> [THE COURT]: Are you satisfied with the advice and help of Attorney Gore has given you?
>
> [RICHARDSON]: Yes, ma'am.

¶7. As part of the plea agreement and in exchange for Richardson's testimony against his co-defendant in the aggravated assault case, the State agreed to dismiss the firearm enhancement. The State also recommended a twenty-year sentence for the burglary and a twenty-year sentence for the aggravated assault, with both to be served concurrently, along with a consecutive five-year sentence for the escape conviction and a fifteen-year sentence for the armed robbery.

¶8. The court clarified, in Richardson's presence, that the fifteen-year sentence for armed robbery would be served day-for-day without eligibility for parole:

> [COUNSEL]: Your Honor, the only thing I would like to add to that would be that the Court order that the 15 years, which is day-for-day on armed robbery, be served first and the others consecutive to that.
>
> . . . .
>
> [THE COURT]: All right. I believe the 15 years . . . he would not be parole eligible[.]

The court then accepted Richardson's guilty pleas after determining that he

> freely and voluntarily entered this plea without any promises or hope of more lenient treatment by the Court or others, without any threats or coercion of any sort, with full knowledge of the consequences of entering this plea, and of the rights that he gave up by entering this plea.

¶9. The court further found that Richardson's pleas were "accurate and that he has acknowledged that he did, in fact, commit the acts which are charged in the indictment[.]" Based on the State's recommendation, the circuit court sentenced Richardson to serve fifteen years for armed robbery, twenty years for burglary, twenty years for aggravated assault, and five years for escape. The court ordered that he first serve fifteen years for armed robbery, followed by the two concurrent twenty-year sentences for burglary and aggravated assault, and then a consecutive five-year term for escape, all in MDOC's custody for a total of forty years. Before doing so, the circuit court then went over Richardson's sentences with him:

> [THE COURT]: The first one we give is the armed robbery.
>
> [RICHARDSON]: Yes, ma'am.
>
> [THE COURT]: And we give that first because?

[RICHARDSON]:     Yes, ma'am, day-for-day.

[THE COURT]:     Okay. All right. Then the second one that we are going to give is going to be the aggravated assault.

[RICHARDSON]:     Yes, ma'am.

[THE COURT]:     And that sentence is?

[RICHARDSON]:     Twenty.

[THE COURT]:     Correct. And that sentence, the aggravated assault, is going to be consecutive or concurrent?

[RICHARDSON]:     Concurrent.

[THE COURT]:     It's going to be consecutive. We changed the order.

[RICHARDSON]:     Oh.

[THE COURT]:     It's going to be consecutive to the armed robbery. Twenty years.

[RICHARDSON]:     Yes, ma'am.

[THE COURT]:     The armed robbery is 15. Ag assault is 20. Then we come back with . . . the burglary of a dwelling, 20 years. Is that concurrent or consecutive?

[RICHARDSON]:     Concurrent.

[THE COURT]:     Concurrent. That's correct. It's concurrent with [the aggravated assault] and [the armed robbery]. And the final one is the escape . . . and that sentence is?

[RICHARDSON]:     Five.

[THE COURT]:     And that sentence is consecutive or concurrent?

[RICHARDSON]:     Consecutive.

[THE COURT]:     And that is consecutive to [the burglary], [the aggravated

7

assault], [the armed robbery], and that is a total of?

[RICHARDSON]: Forty.

¶10. The judgment of conviction was entered on April 23, 2013, and the parole date was set for April 19, 2032, with the tentative discharge date being scheduled for January 14, 2052.

¶11. On October 4, 2022, Richardson filed his PCR motion in the circuit court.[1] In the PCR motion, he contended that Gore misinformed him and his family about the time he would be required to serve in exchange for pleading guilty to the charges he was facing. Richardson argued that he lacked proper advisement from Gore because Gore told him that if he pleaded guilty, he would only be required to serve ten years of his total sentence. Gore purportedly told Richardson that he specialized in the field of legislative parole law and that the law required his release after completing ten years of a sentence imposed on him by the court. Allegedly believing in good faith that pleading guilty was his only option to lessen his potential life sentence, he contends he pleaded guilty to crimes he did not commit. Additionally, he included an affidavit from his mother, which read:

> On this day January 16, 2013, Tucker Gore misled my son Emanuel Richardson into taking a plea of 65 years and that he would do 10 years and be released on parole. He also stated that the DA was fascinated with his charges. Now Emanuel Richardson has been incarcerated for 11 years now with a parole date [for] 2032.

¶12. On July 3, 2024, the circuit court denied Richardson's PCR motion, finding that

_____

[1] In its order dated July 3, 2024, the circuit court found that Richardson was excepted from the three-year statute of limitations under Mississippi Code Annotated section 99-39-5(2) because of newly discovered evidence. No objection was made by the State, and it has not been raised on appeal. This ruling does not affect our finding in this matter.

Richardson failed to provide sufficient evidence to support his contention that his pleas were not voluntarily and intelligently given. Further, according to the plea hearing transcript, Richardson had affirmed his understanding that for his armed robbery conviction, he would be sentenced to serve fifteen years "day for day." He now appeals.

## STANDARD OF REVIEW

¶13. The circuit court's denial or dismissal of a PCR motion will not be reversed absent clear error. *Varnado v. State*, 362 So. 3d 127, 133 (¶16) (Miss. Ct. App. 2023) (quoting *Crockett v. State*, 334 So. 3d 1232, 1237 (¶13) (Miss. Ct. App. 2022)). "Where questions of law are raised, they are reviewed under the de novo standard." *Id.*

## DISCUSSION

¶14. On appeal, Richardson argues that his attorney misinformed him and his family about his eligibility for parole, including the length of time that he would serve. As a result, Richardson contends his guilty pleas were involuntary. Under Mississippi Code Annotated section 99-39-5(2) (Rev. 2020), a PCR motion filed after a guilty plea must be made within three years after entry of the judgment of conviction unless there is a statutory exception. *Goul v. State*, 223 So. 3d 813, 815 (¶6) (Miss. Ct. App. 2017). Regardless, his claims are without merit.

¶15. To prevail on a claim of ineffective assistance of counsel, a defendant "must show that his attorney's performance was deficient and that it resulted in prejudice." *Brooks v. State*, 208 So. 3d 14, 18 (¶10) (Miss. Ct. App. 2017). When a defendant enters a guilty plea, he "waive[s] claims of ineffective assistance of counsel except as they relate to the voluntariness

9

of the giving of the guilty plea." *Id.* To succeed on an ineffective-assistance claim after a guilty plea, the defendant must show that counsel's errors directly led to the plea and that the defendant would not have pled guilty otherwise. *Id.*

¶16.    "For a plea to be voluntary, a defendant must know the possible sentences he might receive as a result of pleading guilty." *Albert v. State*, 372 So. 3d 173, 178 (¶11) (Miss. Ct. App. 2023) (quoting *Lowell v. State*, 229 So. 3d 1054, 1059 (¶18) (Miss. Ct. App. 2017)); *see Reardon v. State*, 341 So. 3d 1004, 1009 (¶14) (Miss. Ct. App. 2022). "The defendant 'must also understand the maximum and minimum penalties provided by law.'" *Id.* (quoting *Britton v. State*, 130 So. 3d 90, 94 (¶10) (Miss. Ct. App. 2013)). Moreover, "mere proof that a defendant has been misinformed as to some aspect of his prospective sentence does not automatically permit him to have that plea set aside. Rather, the defendant must show that he legitimately relied on the misinformation in the decision process that led to his guilty plea." *Albert*, 372 So. 3d at 180 (¶16) (quoting *Hall v. State*, 800 So. 2d 1202, 1206 (¶13) (Miss. Ct. App. 2001)).

¶17.    In *Thinnes v. State*, 196 So. 3d 204 (Miss. Ct. App. 2016), the defendant filed a motion for PCR. He asserted that his counsel incorrectly advised him that if he pled guilty to one count in his indictment, then he would be eligible for parole after serving three years of his sentence. *Id.* at 209 (¶19). The defendant attached seven affidavits from individuals who corroborated his claims, stating that they were present when his attorneys conveyed his information. Moreover, the attorneys allegedly contacted the district attorney during the meeting, who confirmed that he would be eligible for parole after serving three years of his

total sentence. *Id.* At the plea hearing, the circuit court did not ask the defendant whether he understood that pleading guilty would make him ineligible for parole. *Id.* at 209 (¶21). This Court found that the circuit court failed to directly address his parole ineligibility. *Id.* The affidavits provided supported the defendant's claims regarding his counsels' misinformation. *Id.* Therefore, this Court held that the defendant was entitled to an evidentiary hearing on the merits of the claims he raised in his PCR motion because he presented sufficient evidence as to whether his guilty plea was voluntary and whether he received ineffective counsel. *Id.* at 211 (¶27).

¶18. "When a defendant's assertions of ineffective assistance of counsel are substantially contradicted by the court record of the proceedings, the court may disregard such assertions." *Black v. State*, 301 So. 3d 806, 815 (¶27) (Miss. Ct. App. 2020) (quoting *Neal v. State*, 186 So. 3d 378, 384 (¶20) (Miss. Ct. App. 2016)). In *Black*, a man filed a PCR motion claiming that his guilty plea was not made voluntarily or intelligently due to erroneous advice from his counsel regarding his parole eligibility, among other reasons. *Id.* at 812 (¶15). He stated that his counsel repeatedly told him he would receive a life sentence with eligibility for parole after ten years if he agreed to plead guilty. *Id.* The man attached an affidavit to his PCR motion, alleging that his counsel instructed him to write "life" on his plea petition after he noticed that the petition indicated he would be eligible for parole at sixty-five years old, rather than after ten years, as he had been told. *Id.*

¶19. Our Court found that the plea colloquy did not indicate any offer of parole after ten years served. *Id.* at 812 (¶17). During the plea hearing, the defendant had affirmed under

11

oath that he understood the mandatory sentence and the minimum and maximum sentences for his crime, which was life imprisonment. *Id.* Additionally, he had affirmed that he wished to plead guilty with an understanding of his rights and the sentence that the circuit court would impose. *Id.* Moreover, the defendant had signed the sworn plea petition, acknowledging that no one had promised or suggested he would receive a lighter sentence or probation and that his counsel had not threatened or coerced him into entering a guilty plea. *Id.* Therefore, our Court found that the record did not show the man was misinformed about his parole eligibility because the plea colloquy and petition demonstrated that he clearly understood his sentence was life imprisonment. *Id.* at 813 (¶¶17, 19).

¶20.    Defendants must provide sufficient evidence to challenge their guilty plea during their plea hearings, where they were fully informed of all the elements of the crime, the punishments they faced, and the State's recommended sentence. *See Ruffin v. State*, 410 So. 3d 1069, 1077-78 (¶25) (Miss. Ct. App. 2025); *Crockett*, 334 So. 3d at 1241 (¶19) (finding the defendant failed to show sufficient evidence to challenge the guilty plea during the plea hearing); *see also Hays v. State*, 321 So. 3d 1208, 1214 (¶16) (Miss. Ct. App. 2021). In *Ruffin*, a woman filed a PCR motion, asking the court to vacate her guilty plea due to ineffective counsel, which allegedly led to her involuntary plea. *Id.* at 1071 (¶1). This Court found the defendant's involuntary-plea claim failed because she acknowledged that she freely and voluntarily admitted guilt to the crime with full knowledge of the State's recommendation during the plea hearing. *Id.* at 1076 (¶21). The defendant was informed during the hearing that one count would be nolle prossed as a condition of her guilty plea to

a second count, as stated in the plea petition. *Id.* at 1077 (¶23). Thus, this Court held that the defendant's claims were without merit because they did not provide sufficient evidence to refute the sworn testimony. *Id.* at (¶24).

¶21.    Richardson argues that he was misinformed about his sentencing because his attorney, Gore, told him he would serve no more than ten years if he pleaded guilty. However, the State's sentencing recommendation was clearly stated during Richardson's plea hearing, and he expressly agreed to it. The transcript also shows that Richardson informed the circuit court he was satisfied with his attorney's representation and that no one had threatened, coerced, or promised him anything in exchange for his guilty pleas.

¶22.    Unlike *Ruffin*, where both the maximum and minimum sentences were written on the plea petition, Richardson's plea petition listed only "for life." However, during the plea hearing, the court ensured that Richardson understood each count he was pleading to and the corresponding minimum and maximum sentences by requiring him to repeat them aloud and on the record. The court also confirmed his understanding of the State's plea deal, including the recommendation that he serve his fifteen years day-for-day for armed robbery before his other sentences. Richardson acknowledged these on the record.

¶23.    The court further ensured that Richardson understood the implications of his sentences and the rights he was waiving by pleading guilty. Like *Ruffin* and *Black*, here, the transcript of Richardson's plea hearing shows that he acknowledged his sentencing. In Richardson's reply brief, he attempts to distinguish *Black* as supporting his argument that his pleas were made involuntarily. However, the present case is not distinguishable from *Black*. Like the

defendant in *Black*, Richardson argued that his counsel told him he would be eligible for parole; however, during his plea colloquy, Richardson did not indicate that he believed he would be eligible for parole after serving ten years. Thus, any misunderstanding regarding his eligibility for parole was directly addressed when Richardson affirmed under oath that he understood the armed robbery sentence would be served day-for-day without the eligibility for parole, in accordance with the State's recommendation. As a result, we find that the circuit court took great care to ensure that nineteen-year-old Richardson knowingly, intelligently, and voluntarily entered his guilty pleas.

¶24. Further, unlike *Thinnes*, where the defendant submitted multiple affidavits from individuals who directly witnessed or confirmed the attorney's misinformation—including a phone call to the district attorney—Richardson submitted only one affidavit, from his mother, which contained factual inaccuracies. In her affidavit, she stated that Gore misled Richardson into believing he would be eligible for parole after ten years.

¶25. Moreover, unlike *Thinnes*, the circuit court in this case explicitly informed Richardson that pleading guilty would waive his right to appeal his sentences. The court also confirmed that the armed robbery sentence would be served day-for-day without parole eligibility, and Richardson affirmed this understanding on the record. We find no evidence that Gore prejudiced Richardson. The record demonstrates that the circuit court thoroughly informed Richardson of the consequences of his guilty pleas, confirmed his understanding of the sentences, and ensured that each plea was entered knowingly and voluntarily. Accordingly, we affirm the ruling of the circuit court.

¶26.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. EMFINGER, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**